UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK,<br><br>Plaintiff,<br><br>v.<br><br>CONNECT INSURANCE AGENCY, INC.,<br><br>Defendant. | CASE NO. C14-5880JLR<br><br>ORDER ON MOTION TO DISMISS AND STRIKE |

## I.    INTRODUCTION

Before the court is Plaintiff DZ Bank AG Deutsche Zentral-Genossenschaftsbank's ("DZ Bank") motion to dismiss Defendant Connect Insurance Agency, Inc.'s ("Connect") counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and motion to strike Connect's affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f).  (Mot. (Dkt. # 15).)  The court has considered DZ

ORDER- 1

Bank's motion, all submissions filed in support thereof and opposition thereto, the balance of the record, and the applicable law. Being fully advised,[1] the court GRANTS in part and DENIES in part DZ Bank's motion. The court grants DZ Bank's motion to dismiss under Rule 12(b)(1) and dismisses Connect's counterclaims with prejudice and without leave to amend because it finds that amendment would be futile. The court, however, denies DZ Bank's Rule 12(f) motion to strike Connect's affirmative defenses.

## II.  BACKGROUND

**A. The Present Suit**

On November 5, 2014, DZ Bank filed the present action against Connect. (Compl. (Dkt. # 1).) DZ Bank alleges that Connect purchased the assets of various insurance companies, including Advantage Pacific Insurance, Inc. ("Advantage"), after Advantage's former franchisor, Brooke Insurance ("Brooke") failed.[2] (*See id.* ¶¶ 45-60.) DZ Bank asserts that Advantage had previously financed its acquisition of the Brooke agency assets through Brooke Credit Corporation ("BCC"). (*Id.* ¶¶ 20-30, Exs. 7-11.) DZ Bank alleges that Advantage used notes and security agreements to give BCC a

---

[1] Neither party has requested oral argument, and the court deems it unnecessary for disposition of this motion.

[2] DZ Bank originally brought claims involving Connect's purchase of the assets of Choice Insurance, Inc., as well. (*See* Compl. ¶¶ 97-102 (Count I – Conversion of the Choice Collateral), ¶¶ 109-12 (Count III – Unjust Enrichment – Choice Collateral).) However, the parties subsequently stipulated to the dismissal of these claims along with Connect's counterclaims "as related to Counts I and III of DZ Bank's Complaint." (Stip. (Dkt. # 19) at 2.) Thus, DZ Bank's claims and Connect's counterclaims involving the transfer of Choice assets to Connect are no longer at issue.

blanket security interest in all of the respective agency assets, accounts, and rights to payment of Advantage.  (*Id.*)

In its complaint, DZ Bank alleges that, prior to Brooke's failure, BCC assigned its rights under the notes and security agreements at issue here to DZ Bank.  (*See id.* ¶¶ 3-8.)  DZ Bank alleges that Connect purchased the assets of Advantage pursuant to agreements that damaged DZ Bank's rights in the pledged collateral.  (*Id.* ¶ 72, Ex. 19 (attaching April 2010 Sale Agreement between Advantage and Connect).)  DZ Bank does not allege that Connect, as purchaser of Advantage's assets, is an assignee of the rights of Advantage under the franchise agreements with Brooke or the notes with BCC.  (*See generally id.*)  DZ Bank alleges that Advantage defaulted on its obligations to DZ Bank in April 2011, after Advantage's owners had transferred the collateral pledged to DZ Bank to Connect.  (*Id.* ¶¶ 72-96.)

DZ Bank asserts that it has an absolute, immediate, and unconditional right to collateral that was pledged to DZ Bank and that has now been transferred through a series of transactions to Connect.  (*Id.* ¶ 104.)   As a result, DZ Bank asserts claims for conversion and unjust enrichment against Connect regarding the Advantage collateral that is in Connect's possession.  (*Id.* ¶¶ 103-08, 113-16.)

**B.  The Prior DZ Bank Action**

On October 25, 2011, prior to the present lawsuit, DZ Bank filed a complaint in a related matter against Advantage and a related company, API Vancouver, Inc. ("API").  (*See DZ Bank AG Deutsche Zentral-Genossenschaftsbank Frankfurt AM Main v. Advantage Pacific Insurance, Inc., et al.*, No. C11-5879BHS, (W.D. Wash.) ("Prior DZ

ORDER- 3

Bank Action"), Compl. (Dkt. # 1).) Both Advantage and API were owned by David Coley. (*See* Compl. ¶¶ 1, 72-73.) In this prior action, DZ Bank alleged that Advantage, API, and Mr. Coley defaulted on their obligations to DZ Bank as the assignee of BCC and other Brooke entities. (Prior DZ Bank Action, Compl. ¶¶ 7-35.) Mr. Coley filed a pro se Answer on behalf of Advantage and API (*id.*, Answer (Dkt. # 9)), but the court struck the Answer as it pertained to the corporations because such business entities may appear in federal court only through a licensed attorney (*id.*, Order (Dkt. # 13)). On April 17, 2012, Mr. Coley filed for bankruptcy. (*See* Case No. 12-42638PBS (W.D. Wash. Bankr.).) On May 24, 2012, the court granted final default judgment pursuant to Federal Rules of Civil Procedure 54(b) and 55 in favor of DZ Bank against Advantage in the amount of $214,678.38 and against API in the amount of $327,689.21. (Prior DZ Bank Action, Order Granting Default Judgment (Dkt. # 24).) No defendant filed any counterclaims against DZ Bank in this matter. (*See generally* Prior DZ Bank Action, Dkt.)

### C. Connect's Counterclaims

In its amended answer to DZ Bank's complaint in the present action, Connect purports to assert counterclaims against DZ Bank (*see* Am. Ans. (Dkt. # 10) at 12 (Defendant, as and for its counterclaims against Plaintiff, alleges as follows . . . .")); however, few of Connect's allegations actually reference DZ Bank (*see generally id.*). Most of the factual allegations underlying Connect's counterclaims describe an alleged

fraud perpetrated by "the Brooke Companies"[3] and "Brooke"[4] against their Franchisees, which Connect defines as including Advantage and API.[5]  (*See id.* ¶¶ 66-90.)  The only connection to DZ Bank that Connect draws regarding its allegations of fraud by Brooke is Connect's allegation that DZ Bank discovered Brooke's fraud during the first quarter of 2008 and did not inform the Franchisees, but rather began "aggressively contacting" and "inducing" the franchisees to sign ccknowledgments that DZ Bank was the owner of notes issued to finance the purchase of the Brooke insurance franchises.  (*Id.* ¶¶ 91-92.)  Connect also alleges that DZ Bank representatives used "threats and intimidation to coerce the Franchisees to sign the Acknowledgements," which "included waivers of all defense relating to the transactions," and foreclosed on the notes in October 2008.  (*Id.* ¶¶ 92-93.)

None of these allegations, however, indicate that DZ Bank acted in a fraudulent manner toward Connect.  Indeed, the only direct link that Connect draws between itself and Advantage is in one paragraph of Connect's counterclaim allegations.  Connect alleges that "Advantage Pacific ultimately failed and was . . . forced to sell its remaining accounts to Defendant Connect."  (*Id.* ¶ 97.)  Beyond acquiring these assets, Connect does not allege that it acquired any other rights or obligations through Advantage.  (*See*

---

[3]Connect defines "the Brooke Companies" as Brooke Corporation, Brooke Capital Corporation, and Aleritas Corporation.  (Am. Ans. ¶ 66.)  Brooke Corporation and Brooke Capital Corporation filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 28, 2008, in the Bankruptcy Court for the District of Kansas, Case No. 08-22789.

[4] Connect defines as "Brooke" as the "Brooke Credit Corporation and its related entities." (Am. Ans. ¶ 67.)

[5] (*See* Am. Ans. ¶ 67.)

*generally id.*)  Connect raises no allegation that the franchisees assigned any of their rights under the notes or franchise agreements to Connect.  (*See generally id.*)

Connect's allegations contained in each of its specific counterclaims are also nearly devoid of facts related to either Connect or DZ Bank.  For example, the paragraphs of Connect's counterclaim entitled "Breach of the Implied Duty of Good Faith and Fair Dealing" reference only "the Brooke Companies," "Brooke principals," and "Brooke." (*Id.* ¶¶ 99-102.)  DZ Bank is not mentioned in these paragraphs at all.  (*See id.*)  The same is true of paragraphs entitled "Fraud in the Inducement (Brooke)" (*id* ¶¶ 105-08), "Actual Fraud" (*id.* ¶¶ 113-17), and "Breach of Contract" (*id.* ¶¶ 118-23).  These paragraphs only reference "the Brooke Companies," "Brooke," or "Brooke representatives."  (*Id.* ¶¶ 99-102, 105-08, 113-17.)  DZ Bank is not referenced.  (*See id.*)

Connect also alleges a counterclaim entitled "Equitable Estoppel."  (*Id.* ¶¶ 103-04.)  In this counterclaim, Connect alleges that "[t]he Franchisees reasonably relied to their detriment on the misleading statements, omissions, and actions of Plaintiff and/or Plaintiff's assignor . . . ."  (*Id.* ¶ 103.)  Nowhere in this counterclaim does Connect allege that it relied to its detriment on DZ Bank's or anyone else's misleading statements, omissions, or actions.  (*See id.* ¶¶ 103-04.)

Similarly, Connect alleges a counterclaim entitled "Fraud in the Inducement (DZ Bank)."  (*Id.* ¶¶ 109-12.)  In this counterclaim, Connect alleges that "the Franchisees relied to their detriment on the misleading statements, omissions, and actions of DZ Bank . . . ."  (*Id.* ¶ 109.)  However, as noted above, the term "Franchisees" does not refer to Connect, but rather to Advantage and API, who are not parties to this lawsuit.  (*See id.*

ORDER- 6

¶ 67.) In addition, Connect alleges that "Brooke representatives knew these representations were false," and that "[t]he Franchisees reasonably relied on the Brooke Companies' false and misleading actions and representations." (*Id.* ¶¶ 110-11.) There are no allegations in this counterclaim that Connect reasonably relied on anything. (*See id.* ¶¶ 109-12.)

Despite the lack of any allegations that the franshisees' rights or defenses on the notes or franchise agreements were assigned or transferred to Connect, Connect nevertheless asserts that it is entitled to bring any claim or defense that "the Franchisees" could have brought against Brooke. Indeed, Connect describes its position as follows:

> DZ Bank's entire claim is premised on its allegation that Connect is obligated under the security agreement for general intangibles and other collateral and proceeds purportedly pledged by Advantage [] to DZ Bank [and later transferred to Connect]. . . . Thus, DZ Bank's security interest is subject to all terms of the integrated franchise agreement transaction between Advantage []/API and Brooke, and Connect is entitled to all defenses and counterclaims in recoupment arising from the integrated franchise transaction that gave rise to the contract.

(Resp. (Dkt. # 22) at 7.)

DZ Bank brings its motion to dismiss Connect's counterclaims on several grounds. First, DZ Bank argues that Connect's claims must be dismissed for lack of standing and therefore subject matter jurisdiction. (Mot. at 5-9.) DZ Bank argues that Connect has not alleged that it was assigned Advantage's rights under the franchise agreements with Brooke or the notes assigned to DZ Bank. (*Id.* at 6-8.) DZ Bank asserts that Connect's allegations are insufficient to establish that Connect is in privity with Advantage. Thus, DZ Bank argues that Connect has no standing to assert Advantage's claims against either

ORDER- 7

the Brooke entities or DZ Bank, and its counterclaims must be dismissed for lack of standing and subject matter jurisdiction.  (*Id.* at 8-9.)  Second, DZ Bank asserts that even if Connect is in privity with Advantage, its counterclaims are barred by the doctrine of res judicata or the compulsory counterclaim rule.  (*Id.* at 9-18.)  DZ Bank asserts that, to the extent that Connect argues that it stands in the shoes of Advantage, Connect is bound by the failure of Advantage to raise the counterclaims asserted by Connect here in the previous related lawsuit involving Advantage and DZ Bank.  (*Id.*)  Finally, DZ Bank argues that many of Connect's affirmative defenses mirror the assertions in its counterclaims, and therefore the affirmative defenses should be struck on the same grounds.  (*Id.* at 18-20.)

The court now addresses DZ Bank's motion.

### III.   ANALYSIS

**A. DZ Bank's Motion to Dismiss Connect's Counterclaims Pursuant to Rule 12(b)(1)**

DZ Bank brings part of its motion to dismiss Connect's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1).  (*See* Mot. at 5-9.)  To the extent that DZ Bank's motion is based on the contention that Connect lacks standing to assert its counterclaim, the motion is properly characterized as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  *NovelPoster v. Javitch Canfield Group*, No. 13-cv-05186-WHO, 2014 WL 5687344, at *3 (N.D. Cal. Nov. 4, 2014).  A challenge under Rule 12(b)(1) may be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where, as here, the challenge is facial—meaning that it is confined to whether the

allegations are sufficient "on their face" to invoke federal jurisdiction, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)—the court assumes the allegations to be true and draws all reasonable inferences in the complaining party's favor, *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The court may grant a Rule 12(b)(1) motion when the complaint on its face fails to allege sufficient facts to establish subject matter jurisdiction. *See Safe Air for Everyone*, 373 F.3d at 1039.

Article III of the Constitution limits federal court jurisdiction to cases and controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The court assesses justiciability as of the time the complaint is filed. Standing is a "core component" of a case or controversy. *Id*. at 560. The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of constitutional standing: (1) that it suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent," (2) that a "causal connection between the injury and the conduct complained of" exists that is fairly traceable to the opposing party's action, and (3) that the injury likely can be redressed by a favorable decision. *Id*. at 560-61. In the absence of standing, a federal court lacks subject matter jurisdiction over the claim. *Righthaven, LLC. v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013).

Lawsuits by assignees of contract rights satisfy Article III standing requirements. *Sprint Comm's Co., LP v. APCC Servs., Inc.*, 554 U.S. 269, 285-86 (2008). Connect, however, has not alleged that it is an assignee of any of the contract rights of the Franchisees that Connect asserts in its counterclaims. (*See generally* Am. Ans.) Indeed, Connect does not deny DZ Bank's assertion that Connect was not assigned any such

rights and is not otherwise in contractual privity with the Franchisees. (*See generally* Resp.)

Instead, Connect asserts that as the transferee of Advantage's collateral, Connect is an "account debtor" vis-à-vis DZ Bank under Article 9 of the Uniform Commercial Code ("UCC") as codified in Washington. (*Id.* at 3-8.) Specifically, Connect argues that it can assert its counterclaims under § 9-404 of the UCC, which is codified in Washington under RCW 62A.9A-404. (*Id.*) If applicable, this provision gives an account debtor offset rights against an assignee of an account. As relevant here, RCW 62A.9A-404 provides:

> (a) **Assignee's rights subject to terms, claims, and defenses; exceptions.** Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e) of this section, the rights of an assignee are subject to:
>
> (1) All terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and
>
> (2) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.
>
> (b) **Account debtor's claim reduces amount owed to assignee.** Subject to subsection (c) of this section, and except as otherwise provided in subsection (d) of this section, the claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) of this section only to reduce the amount the account debtor owes.

RCW 62A.9A-404.

ORDER- 10

The trouble with Connect's argument is that it has been rejected by the Ninth Circuit. In construing the predecessor of § 9-404 of the UCC, the Ninth Circuit has stated:

> By its terms, § 9318 [now § 9-404] allows a defense only to suit based on the assignment of the account. Section [9-404] does not apply when the suit is for repossession or conversion since the basis for a conversion suit is the secured party's superior property interest in the inventory itself, not the assignment of the account held by the debtor. Thus, so long as the security interest continues in the collateral, the inventory financier need not fear § [9-404] offsets because an action for conversion is available.

*United States v. Handy & Harman*, 750 F.2d 777, 786 (9th Cir. 1984); *see also Farm Credit Servs. of Am. v. Cargill, Inc.*, 750 F.3d 965, 966-67 (8th Cir. 2014). Here, DZ Bank is bringing a suit alleging conversion by Connect of the Advantage collateral, which was pledged as security on notes assigned to DZ Bank. (*See* Compl. ¶¶ 97-108.) Under *Handy & Harman*, the provision of the UCC upon which Connect relies for standing to bring its counterclaims does not apply to this suit.

Further, as DZ Bank points out, Advantage's obligation to DZ Bank is pursuant to a note, which is a negotiable instrument. The definition of "account debtor" specifically excludes a "person obligated to pay a negotiable instrument, even if that instrument constitutes part of chattel paper." RCW 62A.9A-102(a)(3) (account debtor). Connect does not explain how it could be an "account debtor" when Advantage, the entity from which Connect obtained the assets in question, could not be an "account debtor." Even construing Connect's allegations in the light most favorable to Connect, RCW 62A.9A-404 provides no basis for Connect to assert standing to pursue against DZ Bank what would otherwise be claims belonging to Advantage.

Connect raises no other basis for standing to assert its counterclaims—all of which arise out of the alleged fraud visited by Brooke upon Advantage and the other franchisees. Accordingly, the court GRANTS DZ Bank's motion to dismiss Connect's counterclaims under Rule 12(b)(1) for lack of subject matter jurisdiction.[6]

**B. Leave to Amend**

In the context of a motion to dismiss under Rule 12(b)(1), the court should dismiss a complaint or counterclaim without leave to amend if the party could not cure the jurisdictional defect by amendment. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Dismissal without leave to amend is improper "unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)). Here, the court concludes that amendment would be futile because even if Connect could amend its answer to establish standing and subject matter jurisdiction, Connect's counterclaims would nevertheless be barred by the doctrine of res judicata and the compulsory counterclaim rule.

---

[6] Because the court concludes that it lacks subject matter jurisdiction over Connect's counterclaims due to lack of standing, the court does not reach DZ Bank's motion to dismiss Connect's counterclaims based on Rule 12(b)(6). Indeed, it would be improper to do so. When a court determines that it lacks subject matter jurisdiction over a claim, it has no authority to further adjudicate the merits of that claim. *See Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992) ("A final determination of lack of subject-matter jurisdiction of a case in a federal court, of course, precludes further adjudication of it."). The court, however, does consider the compulsory counterclaim and res judicata issues raised by DZ Bank with respect to Connect's counterclaims solely for purposes of assessing whether granting leave to amend would be futile or not.

Connect asserts that DZ Bank's claims are "subject to all terms of the . . . transaction between Advantage[] and Brooke," and that Connect "is entitled to all defenses and counterclaims in recoupment arising from the integrated franchise agreement that gave rise to the contract." (Resp. at 7.) DZ Bank, however, argues that even if Connect could allege facts sufficient to provide Connect with standing to pursue these claims in Advantage's stead, the claims would barred by the doctrine of res judicata and the compulsory counterclaim rule. (*See* Mot. at 11-16.) DZ Bank argues that the counterclaims asserted by Connect here were compulsory counterclaims that Advantage was required to bring in its prior litigation with DZ Bank. However, due to the default judgment against Advantage in the prior suit, those counterclaims are now barred. (*Id.*) The court agrees.

Federal Rule of Civil Procedure 13(a) provides:

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against any opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a). The purpose of Rule 13(a) is to prevent multiplicity of lawsuits and to promptly bring about resolution of disputes. *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1202 (9th Cir. 2010). Where a party has failed to plead a compulsory counterclaim, the claim is waived and the party is precluded by the principles of res judicata from raising it again. *Id.* (citing *Local Union No. 11, Int'l Bhd. of Elec. Workers v. G.P. Thompson Elec., Inc.*, 363 F.2d 181, 184 (9th Cir. 1966)). Under the principles of res judicata, the bar against raising an unpled compulsory counterclaim in a

subsequent suit extends to the party's privies as well. *See Transamerica Occidental Life Ins. Co. v. Aviattion Office of Am., Inc.*, 292 F.3d 384, 392-93 (3d Cir. 2002) (holding that an "'opposing party' in Rule 13(a) should include parties in privity with the formally named opposing parties" in the first lawsuit).

The Prior DZ Bank Action was based on the identical transaction or series of transactions as Connect's counterclaims: Advantage financed the purchase of a Brooke insurance franchise with a loan agreement involving various Brooke entities, including BCC; and DZ Bank, as BCC's assignee, sought to enforce its rights under the note in the Prior DZ Bank Action. (*See generally* Prior DZ Bank Action, Compl.) Indeed, Connect implicitly acknowledges that its counterclaims here arise out of the same transaction or occurrence that was the subject matter of the Prior DZ Bank Action:

> DZ Bank's entire claim is premised on its allegation that Connect is obligated under the security agreement for general intangibles and other collateral and proceeds purportedly pledged by Advantage [] to DZ Bank. . . . Thus, DZ Bank's security interest is subject to all terms of the integrated franchise agreement transaction between Advantage []/API and Brooke, and Connect is entitled to all defenses and counterclaims in recoupment arising from the integrated franchise transaction that gave rise to the contract.

(Resp. at 7.)[7] Connect's acknowledgement above necessarily means that the same counterclaims Connect asserts here as related to Advantage's rights under the franchise

---

[7] Connect's description of DZ Bank's claim is inaccurate. DZ Bank does not assert that Connect is directly "obligated under the security agreement." (*See* Resp. at 7.) Rather, DZ Bank's claims against Connect are for conversion and unjust enrichment based on Connect's alleged violation of DZ Bank's security interest in the Advantage note. (*See* Compl. ¶¶ 103-08, 113-16.) This distinction, however, does not alter the court's analysis concerning the application of res judicata or the compulsory counterclaim rule.

agreement and note would have been compulsory under Rule 13(a) in the Prior DZ Bank Action in which DZ Bank, as BCC's assignee, was suing Advantage on the note. Thus, under the authority cited above, Connect is now barred from raising the same counterclaims in this suit because Connect purports to raise them in Advantage's stead (although no such right has been adequately pleaded), but Advantage failed to raise them in the Prior DZ Bank Action.

      Contrary to Connect's assertions (*see* Resp. at 10-11), the fact that the Prior DZ Bank Action ended in a default judgment does not change the court's analysis. "Default judgments are considered 'final judgments on the merits' and are thus effective for the purposes of claim preclusion." *In re Garcia*, Bank 313 B.R. 307, 311-12 (B.A.P. 9th Cir. 2004) (citing *Howard v. Lewis*, 905 F.2d 1318, 1323 (9th Cir. 1990)). The same is true with respect to the subsequent assertion of a compulsory counterclaim that should have been raised in a prior action that was resolved by a default judgment. *See Springs v. First Nat'l Bank of Cut Bank*, 835 F.2d 1293, 1295-96 (9th Cir. 1988) (holding that a claim was barred because it should have been brought as a compulsory counterclaim in a prior foreclosure action in which the court awarded a default judgment); *see also Montreal v. Lough*, 612 F.2d 467, 472-73 (9th Cir.1980) (holding that counterclaims were so "intimately intertwined" with opponent's prior claim that their assertion was barred by the defendant's failure to assert such claims in the prior British Columbia proceeding and the res judicata effect of that prior default judgment). The assertion of such counterclaims is barred—as are Connect's counterclaims here.

1    Finally, Connect attempts to preserve its counterclaim based on Brooke's alleged
2 forgery of the note with API by arguing that the default judgment in the Prior DZ Bank
3 Action is void because the allegedly forged instrument, upon which it is based, is void.
4 (Resp. at 17-18.)  No party, however, has moved to set aside the default judgment in the
5 Prior DZ Bank Action as based on fraud.  (*See generally* Prior DZ Bank Action, Dkt.)
6 The allegation of forgery was simply another compulsory counterclaim that API should
7 have brought but failed to bring in the Prior DZ Bank Action.  As such, Connect's
8 counterclaim that Brooke allegedly forged the API note is barred by the doctrine of res
9 judicata or the compulsory counterclaim rule for the same reasons that Connect's other
10 counterclaims are also barred under these doctrines.  *Se,e e.g.*, *Hancock v. Kulana*
11 *Partners, LLC*, 992 F. Supp. 2d 1053, 1063 n.2 (D. Haw. 2014) (stating that the
12 plaintiff's claims regarding the forged trustee deed were either actually litigated or could
13 have been litigated in the prior state court action and thus were barred by res judicata in
14 the present suit).

15    Based on the foregoing authorities, the court concludes that granting Connect
16 leave to amend its counterclaims in an effort to correct the jurisdictional deficiency
17 would be futile.  Even if Connect could amend its counterclaims to properly allege
18 standing based on privity with Advantage or otherwise, its counterclaims would still be
19 barred under the doctrine of res judicata and the compulsory counterclaim rule.
20 Accordingly, the court grants DZ Bank's motion to dismiss Connect's counterclaims with
21 prejudice and without leave to amend.
22 //

### C. DZ Bank's Motion to Strike Various Affirmative Defenses

DZ Bank also perfunctorily moves to strike various affirmative defenses asserted by Connect for the same reasons underlying DZ Bank's motion to dismiss Connect's counterclaims. (Mot. at 19-20.) DZ Bank, however, does not provide any authority explaining why its standing argument would apply in the context of an affirmative defense. Courts generally consider the standing doctrine, which is derived from the Article III case or controversy requirements of the Constitution, as it applies to plaintiffs or, in this case, counter-plaintiffs. It may be that the standing doctrine is applicable in the context of affirmative defenses as well. *See United States v. Neset*, 10 F. Supp. 2d 1113, 1116 (D.N.D. 1998) ("In raising an affirmative defense, a defendant is seeking the jurisdiction of the court to hear its claims as much as a plaintiff and, therefore, standing becomes an issue for the defendant as well.") (citing Ninth Circuit authority); *FDIC v. Main Hurdman*, 655 F. Supp. 259, 268-69 (E.D. Cal. 1987); *but see Wynn v. Carey*, 599 F.2d 193, 196 (7th Cir. 1979) (holding standing applies only to plaintiffs). Without briefing from the parties on this issue, however, the court declines to decide it.

In addition, although res judicata or the doctrine of claim preclusion would apply to Connect's counterclaims, collateral estoppel or the doctrine of issue preclusion would apply to Connect's affirmative defenses because these defenses present "issues" in the litigation, rather than separate "claims." The two doctrines, although similar, have distinct elements. *See Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320-21 (9th Cir. 1992). In particular, res judicata bars all grounds for recovery which could have been asserted in a prior suit, whether the grounds were asserted or not. *Id.* at 1320. On

the other hand, collateral estoppel requires that the issue to be barred "must have been actually litigated in the prior litigation." *Id.* DZ Bank never explains how the affirmative defenses it seeks to strike could have been "actually litigated" in the Prior DZ Bank Action, which was resolved by a default judgment. Accordingly, the court finds the parties' briefing inadequate to resolve this issue and therefore denies DZ Bank's motion to strike Connect's affirmative defenses at this time.[8] The court notes, however, that it may be appropriate to revisit the adequacy of Connect's affirmative defenses at a later time, on summary judgment or otherwise.

## IV. CONCLUSION

Based on the foregoing, the court GRANTS in part and DENIES in part DZ Bank's combined motion to dismiss Connect's counterclaims and strike Connect's affirmative defenses (Dkt. # 15). The court grants DZ Bank's motion to dismiss

//
//
//
//

---

[8] Connect's briefing on the issue of its affirmative defenses fares no better. With the exception of a single footnote addressing the distinction between res judicata and collateral estoppel (*see* Resp. at 13 n.5), Connect essentially ignores DZ Bank's motion to strike and provides no specific response to that portion of the motion separate from Connect's response to the motion to dismiss. (*See generally id.*) The court may consider a party's failure to respond "as an admission that the motion has merit." Local Rules W.D. Wash. LCR 7(b)(2). However, as noted above, because DZ Bank also briefed the issue poorly and bears the burden here, the court denies DZ Bank's motion to strike.

Connect's counterclaims with prejudice and without leave to amend, but the court denies DZ Bank's motion to strike Connect's affirmative defenses.[9]

Dated this 17th day of June, 2015.

JAMES L. ROBART
United States District Judge

---

[9] Connect filed a surreply to DZ Bank's reply memorandum. (*See* Surreply (Dkt. # 25).) Local Rule LCR 7(g) permits a party to file a surreply to request that the court strike material contained in an opposing party's reply brief. *See* Local Rules W.D. Wash. LCR 7(g). Any such surreply, however, "shall be strictly limited to addressing the request to strike." *Id.*, LCR 7(g)(2). "Extraneous argument or a surreply filed for any other reason will not be considered." *Id.* Although Connect couches its surreply as a motion to strike material from DZ Bank's reply, it is in fact replete with extraneous argument and therefore filed in contravention of Local Rule LCR 7(g)(2). Indeed, Connect bases its motion to strike on Federal Rule of Civil Procedure 12(f). (Surreply at 1.) This Rule allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). By its terms, Rule 12(f) applies to "pleadings" and not matters contained in the parties' briefs or memoranda. *Id.* Although the court may strike a party's filings pursuant to the court's inherent powers, *see, e.g.*, *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010), the court finds that there are no grounds to strike the material contained in DZ Bank's reply memorandum. Accordingly, the court DENIES Connect's motion to strike.